UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

LAWRENCE D. RALPH, JR.,           )
                                  )
        Petitioner,               )
                                  )
v.                                )        No.:   4:13-CV-53-HSM-SKL
                                  )
DAVID A. SEXTON, Warden,          )
                                  )
        Respondent.               )

## MEMORANDUM OPINION

Acting pro se, Lawrence D. Ralph, Jr., ("Petitioner"), an inmate in the Morgan County Correctional Complex, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his confinement pursuant to a 2008 judgment issued by the Warren County, Tennessee Circuit Court [Doc. 7]. A jury convicted Petitioner of four counts of drug-related offenses, and he is serving an effective sentence of seventeen years' imprisonment for these crimes.

Warden David A. Sexton has submitted an answer to the petition, which is supported by copies of the state court record [Docs. 14, 23, Attachments 1-17]. Petitioner has replied to the Warden's answer, and thus the case is ripe for disposition [Doc. 16].

## I.    PROCEDURAL HISTORY

Petitioner's judgment was affirmed on direct appeal by the Tennessee Court of Criminal Appeals ("TCCA") and the Tennessee Supreme Court denied him further direct appeal. *State v. Ralph*, No. M2009-00729-CCA-R3-CD, 2010 WL 457496 (Tenn. Crim. App. Feb. 10, 2010), *perm. app. denied*, (Tenn. 2007). Petitioner's application for post- conviction relief was denied by the state courts, *Ralph v. State*, No. M2011-02067-CCA-R3-PC, 2012 WL 6645037 (Tenn. Crim. App.

Dec. 20, 2012), *perm. app. denied* (Tenn. 2013), and he then brought this timely habeas corpus application in this Court.

## II.    BACKGROUND

The facts surrounding Petitioner's convictions were recited by the TCCA in its opinion on direct review.

> Testimony in this case was heard at a suppression hearing on October 22, 2008, and at [Petitioner's] October 23, 2008 trial. Testimony at the suppression hearing established that the events underlying this case took place on March 9, 2007. Deputy Kevin Murphy of the Warren County Sheriff's Department testified that on that day, he was asked to go the Arms Apartments in McMinnville to investigate an informant's tip that [Petitioner] and a man named Paul Hale were manufacturing methamphetamine. Deputy Murphy also had been advised that warrants were outstanding for Mr. Hale's arrest. Deputy Murphy established that he had gained significant experience in methamphetamine investigations.
>
> Deputy Murphy knocked on the door of the designated apartment at about noon on March 9. Jacqueline Calaway opened the door. Deputy Murphy explained to her that he was trying to locate Mr. Hale; Ms. Calaway invited Deputy Murphy and two other deputies inside. Upon entering the apartment, Deputy Murphy smelled odors that he recognized as being produced by the manufacture of methamphetamine. He also saw Mr. Hale and [Petitioner] inside the apartment. Deputy Murphy then arrested Mr. Hale and searched his pockets, finding a small amount of methamphetamine and two coffee filters.
>
> Having determined that Ms. Calaway resided in the apartment, Deputy Murphy asked her for consent to search the other rooms. Ms. Calaway consented. In the kitchen, Deputy Murphy found a garbage bag full of chemicals and items used in the manufacture of methamphetamine. During the search, Deputy Murphy also noticed that [Petitioner] had iodine stains on his pants; Deputy Murphy testified that iodine spills were a common occurrence during the methamphetamine manufacturing process, as iodine is "one of the three main ingredients in the manufacture of meth [amphetamine]." Deputy Murphy then placed [Petitioner] under arrest and searched his pockets, finding a small amount of methamphetamine, the butts of a few marijuana

cigarettes, and a syringe cap. Deputy Murphy testified that [Petitioner] had been free to leave before the "meth lab" in the kitchen was found. Deputy Murphy also clarified that a third occupant of the apartment was released because Deputy Murphy did not find sufficient evidence tying him to manufacturing methamphetamine.

[Petitioner] also testified at the suppression hearing. He said he exited the apartment's bedroom when he heard Ms. Calaway talking to Deputy Murphy. Deputy Murphy grabbed [Petitioner] and would not let him leave. [Petitioner] testified that he would have left the apartment if given the chance. [Petitioner] said he had no contraband in his pockets. He was handcuffed and put in a police car before the kitchen meth lab had been found.

The trial court denied [Petitioner]'s motion to suppress the fruits of Deputy Murphy's search of his person.

At trial, Deputy Murphy largely repeated his suppression hearing testimony. He clarified, however, that the warrants which led him to Ms. Calaway's apartment were for a different Charles Paul Hale than the one he found in that apartment; at the time, Deputy Murphy believed he was serving the warrant on the correct Mr. Hale. He noted that Lieutenant Jody Cavanaugh and Deputy Todd Lassiter accompanied him to Ms. Calaway's apartment, that they arrested Ms. Calaway, and that they released the apartment's other occupant, Mr. Eddie Moore.

Deputy Murphy also introduced a full inventory of the items recovered from the garbage bag in the kitchen, which included a bottle of Brakleen, which contains a solvent used to manufacture methamphetamine, a bottle of acid, a quantity of methamphetamine oil, and coffee filters. In other areas of the apartment, Deputy Murphy found a hypodermic needle, foil, a few small red pills, and iodine stains on a chair. He also introduced [Petitioner]'s jeans, again opining that they were stained with iodine. He sent all of the recovered items to the TBI for testing. He noted, however, that the TBI did not test for iodine and accordingly could not confirm his opinion that [Petitioner]'s jeans were stained with iodine. As a witness experienced in methamphetamine investigations, Deputy Murphy opined that methamphetamine had been made in Ms. Calaway's apartment using the meth lab components he recovered.

On cross-examination by the pro se Defendant, Agent Murphy admitted he did not find any iodine crystals, red phosphorus, or

3

pseudoephedrine, all of which are components of the methamphetamine manufacturing process.

Lieutenant Jody Cavanaugh of the Warren County Sheriff's Department generally corroborated Deputy Murphy's testimony, confirming that Ms. Calaway's apartment smelled of a methamphetamine lab and that iodine stains were present on a chair and on [Petitioner]'s jeans. He also did not find any ephedrine, pseudoephedrine, iodine crystals, or red phosphorus, but noted that the recovered methamphetamine oil would contain those substances in a different form.

The State also introduced the TBI lab report reflecting the results of tests conducted on the items found in [Petitioner]'s pockets. It showed that [Petitioner] had possessed .1 grams of methamphetamine and a small amount of marijuana. [Petitioner] stipulated to the chain of custody and the accuracy of the TBI tests.

[Petitioner] chose not to testify at trial, but put on witnesses in his own defense. Helen Eldridge, [Petitioner]'s sister, testified that [Petitioner] had visited her house on March 9. Twenty to twenty-five minutes after he left, she received a call informing her that he had been arrested in a meth lab.

Chad Ralph, [Petitioner]'s brother, testified that [Petitioner] stopped by his house on the day he was later arrested. [Petitioner] arrived between 8:00 and 10:00 a.m., and he was accompanied by a woman Mr. Ralph did not know. Mr. Ralph's residence was "a ways from" the Arms Apartments.

Ms. Calaway testified that she was acquainted with [Petitioner] and Paul Hale, whom she knew by a different name on March 9, 2007. On the evening of March 8, Ms. Calaway slept at her apartment. Her roommate, Eddie Moore, slept there, as well as [Petitioner] and Mr. Hale, whose truck had run out of gas nearby at about 11:00 p.m.

Ms. Calaway woke up the next morning sometime between 6:30 and 7:00 a.m. to put her son on his school bus. At about 8:30 a.m., [Petitioner] asked Ms. Calaway for a ride to his sister's house. She drove him there and waited for him in her truck. Between 11:00 and 11:30, Ms. Calaway dropped [Petitioner] off at a house on Fair Street. She then had her truck washed and stopped at a Big Lots store about a block from her apartment. At about noon, she returned to her apartment complex, where she saw [Petitioner] talking to a neighbor. Ms. Calaway went inside and saw Mr. Moore lying on the living room

4

couch. Mr. Hale was smoking a cigarette in the bedroom. Ms. Calaway did not notice [Petitioner] come back in, but he must have done so because she saw him in the apartment when Deputy Murphy knocked on the door about five minutes later.

Ms. Calaway let Deputy Murphy into the apartment. Deputy Murphy realized that he had located a different Paul Hale than the one on his warrant; he also realized that Mr. Hale had other outstanding warrants and arrested him on those. Ms. Calaway gave Deputy Murphy permission to search the apartment; she was surprised when he found the methamphetamine lab components in her kitchen. She said the garbage bag in which the components were found was not in her apartment when she and [Petitioner] left that morning, and she confirmed that Mr. Hale and Mr. Moore were still in her apartment when they left. Ms. Calaway also said that Mr. Moore had been living with her for about two weeks, but that she had seen no evidence he was involved in methamphetamine manufacture.

Ms. Calaway admitted that she had been arrested on March 9 and had pleaded guilty to promotion of the manufacture of methamphetamine. She said she was innocent of the charge, but that her case was resolved and that she accordingly had no incentive to lie for [Petitioner]. She did not notice any methamphetamine lab odors in her apartment on March 9. Finally, Ms. Calaway noted that she could not say whether [Petitioner] brought methamphetamine lab components into her apartment, because he returned to the apartment before she did.

Finally, [Petitioner]'s father, Lawrence Ralph, Sr., testified that he saw [Petitioner] at [Petitioner]'s sister's house on March 9, and that he received a call about [Petitioner]'s arrest only thirty to sixty minutes after [Petitioner] had left the house.

*Ralph*, 2010 WL 457496, at *1–4. On this evidence, the jury convicted Petitioner of one count of initiating a process to manufacture methamphetamine, one count of simple possession of methamphetamine, one count of simple possession of marijuana, and one count of possession of drug paraphernalia.

## III.  DISCUSSION

Petitioner raises nine claims in his petition:  (1) insufficient evidence on initiating a process

to manufacture methamphetamine; (2) actual innocence of that offense; (3) invalid waiver of right to counsel; (4) interference with right to self-representation; (5) ineffective assistance of counsel; (6) denial of the rights to compulsory process and to present a defense; (7) suppression issue (search); (8) suppression issue (*Stone v. Powell*); and (9) prosecutorial misconduct.

The Warden argues, in his response, that relief should not be granted because Claims 7 and 8 are not cognizable; that Claims 2 - 4, 5 (in part), and 9 have been procedurally defaulted; and that Claims 1, 5 (in part), 6, and 8 were adjudicated on the merits by the state court, culminating in a decision that cannot be disturbed, given the deferential standards of review set forth in 28 U.S.C. § 2254. The Court agrees with Respondent Warden and, for the reasons which follow, will **DENY** the petition and **DISMISS** this case.

The above claims have been organized into three categories for purposes of discussion. The first category is comprised of the non-cognizable claims, the second encompasses the procedurally defaulted claims, and the third consists of those claims which were adjudicated in the state courts.

### A.    Non-Cognizable Claims-Search & Seizure [Doc. 7 pp. 18-19, Claims 7 - 8]

In these two claims, Petitioner asserts that he was searched in violation of the Fourth Amendment's prohibition of unreasonable searches and seizures; that the state court committed error by failing to suppress "articles seized" from his person during that illegal search, as "fruits;"[1]

---

[1] The "fruit of the poisonous tree" doctrine holds that evidence is inadmissible in a criminal prosecution if it is "obtained as a direct result of an unconstitutional search or seizure," or if it is "later discovered and found to be derivative of any illegality or fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804 (1984) (internal quotation marks and citations omitted); *see also Wong Sun v. United States*, 371 U.S. 471, 485 (1963) (evidence, either direct or indirect, which is gleaned from an unlawful search must be excluded).

6

and that the holding in *Stone v. Powell* does not preclude federal habeas corpus review of his claim [Doc. 7 pp. 18-21]. Indeed, Petitioner maintains that the state court ignored his argument that his illegal arrest tainted the subsequent seizure of his person and the search of his pants pocket [Doc. 7 at 21].

Petitioner raised his Fourth Amendment claims in the trial court, which held a suppression hearing and later ruled against him. Dissatisfied with the results of the hearing, Petitioner offered the claims to the TCCA on direct review and obtained another unfavorable decision. The TCCA held that the trial court had found properly that the search of Petitioner was incident to his arrest (an exception to the warrant requirement) and that the issue had no merit. The TCCA did not grant relief.

Respondent argues that the claims are not cognizable in a federal habeas corpus proceeding, pursuant to the doctrine the Supreme Court announced in *Stone v. Powell*, 428 U.S. 465 (1976). *Stone* held that "where the [s]tate has provided an opportunity for a full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494. As noted, Petitioner argues that he was denied a full and fair hearing in which to litigate his Fourth Amendment claims.

In this circuit, to determine whether a Petitioner had a "full and fair" opportunity to litigate his Fourth Amendment claims, a two-part test is applied. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). First, a court "must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim[,]" and second, it must determine "whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Id*. *Stone*'s requirement of an "'opportunity for full and fair consideration' means an available

avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). Nor does *Stone* support an inquiry into the correctness of the state court's decision. *Riley*, 674 F.2d at 526 (citing *Stone*, 428 U.S. at 493 n.35).

Indeed, where a petitioner has presented a "suppression motion to the state trial court, and the trial court rejected it" and he presses the issue on direct review, and again it is rejected, "that suffices to preclude review of the claim through a habeas corpus petition under *Stone v. Powell*." *Good*, 729 F.3d at 640. That is just what happened here. Therefore, the *Stone* rule applies to Petitioner's claims and Claims 7 and 8 are not reviewable in this habeas corpus proceeding. *See Seymour v. Walker*, 224 F.3d 542, 553 (6th Cir. 2000).

## B.    Procedurally Defaulted Claims

### 1.    The Law

Procedural default is an extension of the exhaustion doctrine. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006) ("In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default although [they] 'are similar in purpose and design and implicate similar concerns.'" (quoting *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 7 (1992)).

A federal court cannot grant a state prisoner's petition for a writ of habeas corpus unless the petitioner has exhausted his available state court remedies. 28 U.S.C. § 2254. The exhaustion rule requires total exhaustion of state remedies, *Rose v. Lundy*, 455 U.S. 509, 522 (1982) (stating that "a total exhaustion rule promotes comity and does not unreasonably impair the prisoner's right to relief"), meaning that a petitioner must have fairly presented each claim for disposition to all levels of appropriate state courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-47 (1999).

8

Indeed, to exhaust state remedies, a petitioner must have presented the very issue on which he seeks relief from the federal courts to the courts of the state which he claims is wrongfully confining him. *Picard v. Connor*, 404 U.S. at 276 ("The [exhaustion] rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts."); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (citing *Picard*, 404 U.S. at 271). A claim must also be offered on a federal constitutional basis—not merely as one arising under state law. *Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001) (citing *Riggins v. McMackin*, 935 F.2d 790, 792-93 (6th Cir. 1991)). It is a petitioner's burden to show exhaustion of available state court remedies. *Rust*, 17 F.3d at 160.

A prisoner who has failed to present a federal claim to all levels of the state courts and who is now barred by a state procedural rule from returning with his claim to those courts has committed a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Federal review of a procedurally defaulted claim is foreclosed, unless the habeas petitioner shows cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation or demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice. *Id.* Cause can be shown where interference by state officials has rendered compliance with the rule impracticable, where counsel rendered ineffective assistance in violation of the prisoner's right under the Sixth Amendment, or where the legal or factual basis of a claim is not reasonably available at the time of the procedural default. *Murray v. Carrier*, 477 U.S. 478, 488, 492 (1986). A petitioner demonstrates prejudice by establishing that the constitutional error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional

9

dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

### 2.    Analysis

Petitioner alleges in Claim 2 that he is actually innocent of initiating a process to manufacture methamphetamine; in Claim 3, that his waiver of the Sixth Amendment right to counsel was invalid; and in Claim 4, that in several instances, his stand by counsel interfered with Petitioner's right of self-representation—a right recognized in *Faretta v. California*, 422 U.S. 806 (1975).

### a.    Claim 2 - Actual Innocence [Doc. 7 p.3]

Petitioner asserts that testimony provided by Charles Paul Hale in Petitioner's post-conviction hearing establishes a free standing claim of actual innocence and that Hale "is the person guilty of initiating a process to manufactural methamphetamine, not Ralph" [Doc. 7 p. 7]. Essentially, Hale testified that, after Petitioner left the apartment where the methamphetamine was made, Hale retrieved "gassin material" from his truck, which he stated was used to "gas off the dope with once it's cooked,"—all without Petitioner's knowledge [*Id.*]. Petitioner characterizes Hale's testimony as being "conclusive exoneration" [*Id.*].

Respondent argues that Claim 2 was not presented first to the state courts for consideration, which constitutes a procedural default, and that alternatively, the claim lacks merit.

Petitioner counters that, contrary to Respondent's argument, he presented his claim of innocence to the TCCA in his post-conviction appeal; that the TCCA refused to review the claim, finding that it was not cognizable in a post-conviction proceeding; and that this constitutes proper exhaustion [Doc. 16 p.7].

The state court record shows that the claim presented to the TCCA was that the trial court should have considered Hale's testimony, which was provided under oath at the post-conviction hearing (i.e., that Petitioner "was not present nor [sic] aware that he [Hale] had brought

10

methamphetamine making materials into the apartment"), as new evidence warranting a new trial [Doc. 23-14 pp. 11-12]. Petitioner did not cite to any federal cases in support of his claim. Petitioner did not refer to his claim as a federal claim. Indeed, the only case Petitioner cited in the section of his brief which discussed the actual-innocence claim was *Handley v. State*, 1993 WL 331819 (Tenn. Crim. App. Aug. 26, 1993) [*Id*. at 12], a case which involved claims of ineffective assistance and which made no mention of new evidence or actual innocence.

The TCCA addressed the claim as follows:

> The Petitioner also argues on appeal that Mr. Hale's testimony at the post-conviction hearing that the Petitioner was unaware of the methamphetamine materials in the apartment constituted newly discovered evidence and should result in a new trial. However, this court has previously held that claims of actual innocence not based on newly discovered scientific evidence are not cognizable in a petition for post-conviction relief. Accordingly, this issue is without merit.

*Ralph*, 2012 WL 6645037, at *8 (all internal citations omitted). The TCCA cited to a state court case which had held that "claims of actual innocence not based on new scientific evidence should be raised in a petition for writ of error coram nobis or in an application for executive clemency." *Id.*

The Court finds that Petitioner did not alert the state court to the federal nature of his claim, if, in fact his claim it can be characterized as a true stand-alone federal claim. "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin*, 541 U.S. at 32; *Stanford*, 266 F.3d at 451 ("To be eligible for habeas relief on any given claim, a state prisoner first must fully and fairly present his claim, as a matter of federal law, to state courts."). Petitioner did none of these things.

11

Moreover, the TCCA, apparently recognizing the state law basis for the claim, directed Petitioner to the appropriate state court avenue for raising a claim of new evidence, before it went on to find that the claim lacked merit.

Raising a claim under the aegis of state law, does not exhaust it for purposes of the federal exhaustion doctrine. *Stanford*, 266 F.3d at 451 ("Merely raising an issue as a matter of state law will not satisfy the exhaustion requirement.").

Because petitioner did not exhaust his federal claim—assuming that he has a distinct federal claim—in the state courts and because he has no remaining opportunity to do so, given the one-year statute of limitations for filing petitions for a writ of error coram nobis in Tennessee, *see* Tenn. Code Ann. § 27-7-103; *State v. Mixon*, 983 S.W.2d 661, 671 (Tenn. 1999), the claim is now procedurally barred.

Petitioner suggests that the Court cannot find a procedural default, under the four-factor test for the procedural default bar discussed in *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004), but he does not offer any developed argument to support his position. Citing to *Lee v. Kemna*, 534 U.S. 362, 376 (2002), Petitioner next suggests that the TCCA's refusal to hear his claim of actual innocence and its finding that any such a claim should be presented in a petition for a writ of error coram nobis is an "exorbitant application" of a state procedural rule, but his argument goes off the rails. Unlike in *Lee*, the TCCA did not invoke a state procedural rule to bar to Petitioner's claim on appeal, but merely pointed out that a coram nobis petition was the proper procedural vehicle for Petitioner's claim.

Petitioner's assertion that counsel should have "removed" the actual innocence issue from the post-conviction appeal and should have presented it, instead, in a coram nobis petition [Doc. 16 p. 13] is unavailing. To the extent that Petitioner is alleging ineffective assistance by post-conviction

12

counsel as cause to excuse his procedural default, there is no right to counsel in a post-conviction proceeding and, thus, no right to the effective assistance of counsel. *Coleman*, 501 U.S. at 752; *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).

Petitioner has not shown cause or prejudice. Nor has Petitioner established that a miscarriage of justice will result if his claim is not reviewed. Even though Petitioner maintains that he has presented "indisputable proof of his innocence" [*Id*. at 9], as Respondent points out, the record discloses evidence that Petitioner was involved personally in initiating a process intended to result in the manufacture methamphetamine, since the tenant of the apartment denied that the components of the methamphetamine laboratory belonged to her and testified that she did not put the trash bag containing the components of a methamphetamine laboratory on her kitchen floor, that the bag was not on the floor when she left her apartment, and that, when she returned, Petitioner had been in her apartment for a time.

Furthermore, Petitioner had iodine stains on his jeans, and iodine stains on the clothing of those who are manufacturing methamphetamine are common, according to expert testimony offered at Petitioner's trial. Petitioner has not made a credible showing of a miscarriage of justice. *See Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (holding that a claim of actual innocence means factual innocence, not legal innocence).

In the alternative, even if the claim were not procedurally defaulted, the Supreme Court has not recognized the existence of a freestanding actual innocence claim. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). Instead, an actual innocence claim can be used to invoke the miscarriage of justice exception to avoid a time-bar or a procedural default of another claim. *Id*. at 1928 ("We hold that actual innocence, if proved, serves as a gateway through which a

13

petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations.").

Petitioner has not moored his actual-innocence claim to another claim which was either procedurally defaulted or barred by the one-year statute of limitations for filing a § 2254 petition, *see* 28 U.S.C. § 2244(d)(1), and thus he has failed to state a cognizable gateway actual innocence claim.

Therefore, to whatever extent the state court's finding that Petitioner's actual innocence claim lacked merit can be viewed as an adjudication of a federal claim, within the terms of § 2254(d), the TCCA's decision was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010) ("A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the Supreme] Court.") (citing *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *see also Carey*, 549 U.S. at 77 (finding that, where there is no Supreme Court precedent deciding the issue presented, the state court decision cannot be contrary to or an unreasonable application of a clearly established governing rule in a Supreme Court case).

The writ will not be granted with respect to this claim.

**b.     Claim 3 - Invalid Waiver of the Right to Counsel [Doc. 7 p.7]**

Petitioner asserts that his right to counsel under the Sixth Amendment was violated when he did not knowingly, intelligently and voluntarily waive that right and that the appointment of standby counsel cannot function as a substitute for a detailed inquiry into his decision to waive his right to counsel. Petitioner insists that, when the state court found that he was asserting his right of self-representation, he was expressing his frustration at counsel[2] and was not seeking to represent himself.

---

[2] For example, Petitioner alleges that, during the trial court's inquiry into whether he wanted to proceed *pro se* or to continue to trial with his appointed attorney, Petitioner stated that he was

14

Petitioner further insists that he was forced to make an unconstitutional choice between representation by counsel with whom he had an irreconcilable conflict and a breakdown in communications or proceeding to trial pro se [Doc. 7 pp. 7-8.].

Respondent argues that this claim was not presented to the appellate state courts for consideration on direct review or post-conviction appeal and that this failure constitutes a procedural default. To resist a finding of procedural default, Petitioner asserts, as cause, that he is actually innocent and that he received ineffective assistance from his trial and post-conviction counsels. This claim of cause is not accompanied by any developed argument. Moreover, the Court has already discussed the actual innocence claim and finds that no further discussion is warranted. Furthermore, and as discussed more fully *infra*, Petitioner represented himself at trial and, therefore, he cannot assert a claim ineffective assistance of trial counsel. Finally, while ineffective assistance of post-conviction counsel can form the basis of a claim of cause for the procedural default of an underlying claim of ineffective assistance of trial counsel, *see Martinez v. Ryan*, 132 S. Ct. 1309 (2012), Petitioner's claim involves the validity of his waiver of the right to counsel, not a claim of ineffective assistance.

Accordingly, federal habeas corpus review of this claim is now precluded by Petitioner's unexcused procedural default.

---

unable to get counsel "to do the things [Petitioner] was trying to get him to do," that counsel refused to "ask some questions" and "got plum mad" about what Petitioner was asking of him, and that counsel "just absolutely refused" to validate or repudiate Petitioner's desired line of questioning, which led Petitioner to file several *pro se* pretrial motions to "make sure they were getting filed" [Doc. 7 at 8]. Petitioner, who testified at trial that he "hadn't done anything," was also frustrated over counsel's refusal to subpoena Charles Paul Hale, the supposed true owner of the methamphetamine components found in the apartment [*Id.*]

15

### c. Claim 4 - Interference with Petitioner's Right of Self-Representation [Doc. 7 p.8]

Petitioner asserts that the jury's perception that he was representing himself was destroyed when standby counsel: (1) participated in the stipulation and admission of the TBI laboratory report into evidence; (2) objected three times during the prosecutor's questioning of a witness; (3) questioned another witness and made a number of objections as she testified; and (4) stipulated to the minimum fines for several counts of conviction [*Id.* p.12].

Respondent argues that this claim was not presented to the appellate state courts for consideration on direct review or post-conviction appeal and that the failure to present the claim constitutes a procedural default, in that Petitioner now is barred from returning to state courts by virtue of Tennessee's post-conviction statute of limitations and post-conviction laws restricting the filing of successive state petitions [Doc. 14 p.17].

To rebut Respondent's defense of procedural default, Petitioner asserts, as cause, that he is actually innocent and that he received ineffective assistance of trial and post-conviction counsel [Doc. 16 p.15]. For the same reasons the Court rejected Petitioner's claim of cause in the immediately preceding claim, the Court likewise rejects this one.

The Court therefore finds that this claim too has been procedurally defaulted. Federal habeas corpus review of the claim is now barred by Petitioner's unexcused procedural default.

### d. Claim 9 - Prosecutorial Misconduct [Doc. 7 p.21]

Petitioner maintains that the prosecutor engaged in misconduct when he vouched for witnesses, appealed to the jury to act as the community's conscience, gave his personal opinions, misrepresented facts in evidence, and made references to Petitioner's co-defendants' guilty pleas and bad acts [*Id.* at 21-22]. Respondent again asserts that Petitioner failed to offer this claim to the state

16

appellate courts for consideration on direct review or post-conviction appeal and that this failure constitutes a procedural default since Petitioner is barred from returning to state courts with his claims by the post-conviction statute of limitations and the restrictions on filing successive state petitions [Doc. 14 p.31].

Petitioner agrees that this claim has been procedurally defaulted. Nevertheless, Petitioner asserts, as a claim of cause, that counsel failed to raise the issue of prosecutorial misconduct in a motion for a new trial, on direct appeal, in the post-conviction petition, and in the post-conviction appeal. Petitioner also maintains that a miscarriage of justice would result if his claim does not receive habeas corpus review. Petitioner has offered no developed argument to support his claims of cause or miscarriage of justice In addition, the Court has already disposed of his claim of actual innocence and has also observed that Petitioner enjoys no right to post-conviction counsel and, thus, no right to effective assistance from that counsel.

Accordingly, Petitioner's unexcused procedural default bars federal habeas corpus review of his prosecutorial misconduct claim.

### e.   Claim 5 (Part) - Ineffective Assistance of Counsel (Failure to Interview witnesses) [Doc. 7 pp. 12-13]

In a sub-claim in his broad claim of ineffective assistance of counsel, Petitioner maintains that his counsel failed to interview Officer Murphy and Holly Clayton. Respondent argues that Petitioner failed to offer this claim to the state court for consideration during his post-conviction proceedings and that his failure erects a procedural bar to federal habeas corpus review.

The issue was raised in the TCCA in Petitioner's post-conviction appeal brief, but the TCCA held that the issue was waived due to his failure to present the claim during his post-conviction proceedings in the trial court. *Ralph*, 2012 WL 6645037, at *9. Petitioner has chosen not to object to

this procedural default defense [Doc. 16 p.23].

Where a petitioner has actually presented his federal claim to the state courts but those courts have declined to address it due to his failure to meet a state procedural requirement, that claim is subject to a finding of procedural default. *See, e.g., Murray v. Carrier*, 477 U.S. 478 (1986).

When a state invokes a procedural default defense, a federal court in the Sixth Circuit must make four determinations: (1) whether there is a procedural rule which applied to a petitioner's claim and whether a petitioner complied with the rule; (2) whether the procedural rule was actually enforced against a petitioner; (3) whether that rule is an adequate and independent state ground sufficient to block habeas review; and (4) whether a petitioner can demonstrate cause for his failure to comply with the rule and prejudice resulting from the alleged constitutional violation. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Beuke v. Houk*, 537 F.3d 618, 630 (6th Cir. 2008) (applying *Maupin*).

Tennessee has a rule providing that an issue is waived if not raised in an earlier proceeding where it could have been raised. *See* Tenn. Code Ann. § 40-30-106(g); *Koffman v. State*, No. M200900951CCAR3PC, 2010 WL 3774444, at *3 (Tenn. Crim. App. Sept. 29, 2010) (finding waiver where a petitioner failed to assert a claim to the post-conviction court) (citing Tenn. Code Ann. § 40-30-106(g)). The TCCA applied this rule to Petitioner's claim. Tennessee's waiver rule is an adequate and independent state ground sufficient to foreclose habeas review. *Hutchison v. Bell*, 303 F.3d 720, 738 (6th Cir. 2002). No cause and prejudice has been shown, and this claim is barred from federal habeas corpus review by Petitioner's procedural default.

## B. Adjudicated Claims

Under the review standards set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), codified in 28 U.S.C. § 2241, a court considering a habeas claim must defer to any

18

decision by a state court concerning the claim unless the state court's judgment: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies the principle to the particular facts of the case. *Id.* at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id.* at 411.

The AEDPA standard is a high standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'" (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). AEDPA prevents the use of "federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). Furthermore, findings of fact which are sustained by the record are entitled to a presumption of correctness—a presumption which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### a.      Claim 1 - Insufficient Evidence [Doc. 7 pp. 12-13]

Petitioner asserts in the first claim in this category of claims that there was not sufficient evidence to sustain his conviction for initiating a process designed to manufacture methamphetamine.

The main thrust of his challenge to the evidentiary sufficiency on this count of conviction is that he was merely present at the site of the methamphetamine-making venture and that, even though the prosecution proved several elements of the statute upon which his conviction was based, the prosecution failed to establish that it was he who violated the statute. Ralph attempts to bolsters his argument of insufficient evidence by pointing to the lack of proof showing that he had a "possessory interest" in the apartment where the methamphetamine components were found, that those components were in his actual or constructive possession, or that he was involved in any part of the process of making methamphetamine.

When this claim was carried to the TCCA, it cited to *Jackson v. Virginia*, 443 U.S. 307 (1979), for its rule that evidence is sufficient to convict if, after considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Ralph*, 2010 WL 457496, at *5 (citing *Jackson*, 443 U.S. at 319).

The TCCA approached its analysis of the claim by setting forth the elements of the statute of conviction, which provided that: "[i]t is an offense for a person to knowingly initiate a process intended to result in the manufacture of any amount of methamphetamine." *State v. Ralph*, No. M200900729CCAR3CD, 2010 WL 457496, at *6 (Tenn. Crim. App. Feb. 10, 2010) (quoting Tenn. Code. Ann. § 39-17-435(a)). The TCCA then stated that the word "initiates" as used in the statute means "to begin the extraction of an immediate methamphetamine precursor from a commercial product, to begin the active modification of a commercial product for use in methamphetamine creation, or to heat or combine any substance or substances that can be used in methamphetamine creation." *Id.* (quoting Tenn. Code Ann. § 39-17-435(c)). The TCCA noted that the statute also provided that a qualified law enforcement officer could provide expert testimony as to whether "a particular process can be used to manufacture methamphetamine." *Id.* (quoting Tenn.Code Ann. §

20

39-17-435(d).

The TCCA held that there was sufficient convicting evidence to satisfy the statutory elements based on witnesses' testimony at trial, which showed that Petitioner had the opportunity to be in the apartment with the later-discovered methamphetamine lab, that iodine is a substance used in methamphetamine creation, that iodine spills were a frequent occurrence in the methamphetamine creation process, and that Petitioner's pants were stained with what was believed to be iodine. *Id*. The TCCA concluded that the claim was meritless.

The controlling rule for resolving a claim of insufficient evidence is contained in *Jackson v. Virginia*. *See Gall v. Parker*, 231 F.3d 265, 287-88 (6th Cir. 2000) (commenting that *Jackson* is the governing precedent for claims of insufficient evidence.), *superseded by statute on other grounds as recognized by Parker v. Matthews*, 132 S. Ct. 2148 (2012). In *Jackson*, the Supreme Court held that evidence, when viewed in the light most favorable to the prosecution, is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from the facts are all matters which lie within the province of the trier of fact. *Id*. at 319; *Cavazos v. Smith*, 132 S.Ct. 2, 6 (2011) ("[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"(quoting *Jackson*, 443 U.S. at 326)).

A habeas court reviewing an insufficient-evidence claim must apply two levels of deference. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). Under *Jackson*, deference is owed to the fact finder's verdict, "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (quoting *Jackson*, 443

21

U.S. at 324 n.16). Under AEDPA, deference is also owed to the state court's consideration of the trier-of-fact's verdict. *Cavazos*, 132 S.Ct. at 6 (noting the double deference owed "to state court decisions required by § 2254(d)" and "to the state court's already deferential review"). Hence, a petitioner "bears a heavy burden" when insufficiency of the evidence is claimed. *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

The record comprises testimony that Petitioner was in the apartment, in which was discovered a trash bag containing components used in making methamphetamine, and that methamphetamine oil was found in the apartment. There is also testimony that Petitioner had methamphetamine on his person and iodine stains on his "blue jeans" [Doc. 23-4 p.72]. Law enforcement officials testified that iodine was one of three main ingredients used to produce methamphetamine and that, frequently, iodine stains appear on the clothing of those involved in making methamphetamine.

Petitioner argued to the jury that he was a visitor in the apartment and, in essence, that his mere presence was not enough to show that he initiated the manufacture of methamphetamine. The jury did not accept that argument. Nothing Petitioner has presented to this Court demonstrates that the TCCA unreasonably determined that the evidence presented to the jury was sufficient to sustain his methamphetamine-related conviction. Indeed, given the double deference owed to the state court's conclusion and given this record and the evidence contained therein, this Court now finds that the state court's application of *Jackson* to the facts of Petitioner's case was not unreasonable and that its decision was not based on unreasonable factual determinations.

No writ will issue with respect to this claim.

### b.      Claim 5 (Part) - Ineffective Assistance of Counsel [Doc. 7 pp. 12-13]

Petitioner's remaining sub-claims of ineffective assistance[3] are that counsel failed:  (i) to confer with Petitioner adequately; (ii) to request a continuance when Holly Clayton did not appear for trial; and (iii) to investigate and subpoena his co-defendant, Charles Paul Hale, to testify at trial

To prevail on a claim of ineffective assistance, a petitioner must show that a deficient performance on the part of counsel resulted in prejudice to his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688.  Petitioner must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).  Thus, it is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

When considering prejudice, a petitioner must show a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  A reasonable probability "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted).

Finally, petitioners who assert claims of "ineffective assistance of counsel under *Strickland* have a heavy burden of proof." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005). "[W]hen a

---

[3] Recall that one of the four sub-claims of ineffective assistance asserted in the habeas corpus petition has been procedurally defaulted based on the TCCA's finding that Petitioner had waived it by failing to present the claim to the trial court in his post-conviction appeal.

federal court reviews an ineffective-assistance claim brought by a state prisoner, the question is not simply whether counsel's actions were reasonable, 'but whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

Citing to *Faretta v. California*, 422 U.S. 806 (1975), Respondent first asserts that a petitioner who represents himself cannot bring a claim of ineffective assistance in order to attack his own representation or that of standby counsel [Doc. 14 p.18]. Respondent also asserts that Claim (i) is insufficiently pled, in violation of Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts. In the alternative, Respondent maintains that the state court's adjudication of Claims (i), (ii) and (iii) was not contrary to or an unreasonable application of the relevant Supreme Court precedent in *Strickland*.

In *Faretta*, the Supreme Court held that the Sixth Amendment, which provides a right to counsel, implies that a criminal accused has a right to represent himself and that "forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Id.* at 817, 819-20. Yet, the Supreme Court made clear that a defendant who chooses to represent himself may not then complain "that the quality of his own defense" deprived him of his Sixth Amendment right to the effective assistance of counsel. *Id.* at 834 n.46; *Wilson v. Parker*, 515 F.3d 682, 696 (6th Cir. 2008) ("By exercising his constitutional right to present his own defense, a defendant necessarily waives his constitutional right to be represented by counsel . . . [and cannot] then complain about the quality of his own defense") (internal citations omitted); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006) (finding that "the inadequacy of standby counsel's performance, without the defendant's relinquishment of his *Faretta* right, cannot give rise to an ineffective assistance of counsel claim under the Sixth Amendment").

24

Moreover, ineffective assistance provided by standby counsel is a consequence of a petitioner's decision to proceed *pro se*. *United States v. Ross*, 703 F.3d 856, 882 (6th Cir. 2012) (citing *Wilso*n, 515 F.3d at 697); *but see United States v. Amir*, No. 14-3847, 2016 WL 683248, at *5 (6th Cir. Feb. 19, 2016) (noting that standby counsel at a competency hearing must provide "meaningful adversarial testing" of a defendant's competency to stand trial to satisfy the Sixth Amendment right to counsel).

Citing to *Strickland*, the TCCA applied its test to Petitioner's claims of ineffective assistance and required him to show: "(1) that counsel's performance was deficient and (2) that the deficiency was prejudicial." *Ralph*, 2012 WL 6645037, at *7. Because the TCCA cited to *Strickland* and employed *Strickand*'s two-pronged test in reviewing Petitioner's claims, its conclusions relative to those claims are not contrary to the well-established legal rule in Supreme Court cases governing ineffective assistance claims.

Relying on *Farretta*'s rule that "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of the effective assistance of counsel," the TCCA limited its examination of Petitioner's ineffective assistance of counsel claims to those which were "based upon counsel's actions prior to the time [Petitioner] elected to proceed pro se." *Ralph*, 2012 WL 6645037, at *7 (quoting *Farretta*, 422 U.S. at 834 n.46).

The TCCA then addressed Petitioner's claim that counsel did not "adequately meet with him" so as to "to discuss strategy and gain information," noting that counsel had testified at the post-conviction hearing that he had met with his client on several occasions before Petitioner requested to represent himself the day before trial, had interviewed witnesses, had investigated Petitioner's claims, and had developed a trial strategy that ultimately was used by Petitioner at the trial. Finding no reason to disturb the trial court's credibility finding in favor of counsel over the contrary testimony of

25

Petitioner that counsel had met with him approximately thirty minutes, the TCCA did not grant relief on this claim.

The TCCA next discussed Petitioner's allegations that counsel failed to investigate Hale and call him as a witness at trial, observing that counsel had testified that he had interviewed Hale at the state prison wherein Hale was confined and that Hale had informed counsel that his testimony "would hurt" Petitioner because Hale was angry with Petitioner. Locating nothing in the record to suggest that counsel should have known that Hale was lying or being dishonest, the TCCA found that counsel's decision not to subpoena a witness who was openly hostile to his client was a strategic decision, and one which was not to be second-guessed.

Finally, the TCCA held that *Faretta* applied to Petitioner's allegation that counsel did not request a continuance when Holly Clayton failed to appear at trial because, when that event occurred, Petitioner was representing himself, with trial counsel serving only as standby counsel, so that the "responsibility for securing a continuance rested solely" on Petitioner. *Ralph*, 2012 WL 6645037, at *9. Since Petitioner himself was chargeable with the alleged error, the TCCA did not grant him relief.

Petitioner only challenges the TCCA's decision concerning trial counsel's second alleged error, i.e., counsel's failure to subpoena Hale [Doc. 16 p. 16]. With respect to counsel's questioned decision in this regard, Petitioner argues that counsel failed reasonably to assess Hale's credibility or value as a witness since Hale's testimony "would have completely exculpated" Petitioner [*Id*. at 18].

As *Strickland* instructs, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and that [s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 689, 690. Deference is owed to an attorney's strategic decisions, of which

26

Petitioner's counsel's choice not to subpoena a hostile witness was one such decision. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (observing that there is no requirement for "defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success").

And, though the TCCA did not directly so state, it is clear that that there was no prejudice since other witnesses testified that "Petitioner was not at the apartment the morning before the search" and that Petitioner was "unaware of the methamphetamine materials in the apartment." *Ralph*, 2012 WL 6645037, at *8. "Counsel's failure to present cumulative evidence does not establish prejudice." *Jackson v. Bradshaw,* 681 F.3d 753, 770 (6th Cir. 2012).

The TCCA did not unreasonable apply *Strickland* in its adjudication of this claim in its entirety. The writ of habeas corpus will not issue on Petitioner's ineffective assistance claims.

### c.      Claim 6 - Denial of Clayton's Testimony [Doc. 7 p. 17]

In his last claim in this category, Petitioner maintains that he was denied the right to present a defense when the trial court prevented Holly Clayton from testifying as a witness at this trial and, alternatively, that trial counsel was ineffective for failing to ensure that Clayton would be permitted to testify.

In Petitioner's direct appeal, the TCCA discussed the alleged error on the part of the trial court as follows:

> A defense witness named Holly Clayton failed to appear at trial. The Defendant noted her absence to the court before trial began, but chose to proceed; when Ms. Clayton still had not arrived by the end of Ms. Calaway's testimony, the Defendant moved for a continuance. The trial court, noting that the Defendant's file did not contain a return on Ms. Clayton's subpoena, denied his motion. In an offer of proof after trial, the Defendant's uncle, David Ferrell, testified that he picked up a subpoena for Ms. Clayton and gave it to another of the Defendant's relatives, who said he would serve Ms. Clayton. Hearsay testimony by Mr. Ferrell suggested that Ms. Clayton received the subpoena but later

27

> contacted someone from the State who told Ms. Clayton she did not
> have to appear because the subpoena "wasn't properly served."

*Ralph*, 2010 WL 457496, at *7.

The Supreme Court has held that "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19 (1967). Though Petitioner claimed in the TCCA that the denial of a continuance to allow him to locate Clayton violated his Sixth Amendment right to compulsory process, not that it violated his right to present a defense, and though a claim which has not been offered to the state courts under the same theory as supports it in a habeas corpus petition has been procedurally defaulted and may not be reviewed absent a showing of cause and prejudice, *Wong v. Money*, 142 F.3d 313, 322 (6th Cir.1998) (finding that a procedural default occurs when "a claim rests on a theory which is separate and distinct from the one previously considered and rejected in state court"), the Court will interpret the claim made here to be the same one as presented in the TCCA since these theories seem to be merely different ways of expressing the same concept.

The TCCA reviewed Petitioner's claim that the trial court denied him a continuance as a violation of his right to compulsory process. In so doing, the TCCA noted that criminal defendants have a Sixth Amendment right to compulsory process for obtaining witnesses in their favor; that the right is not absolute; and that a court is empowered to prevent abuse of process by abating subpoenas for witnesses whose testimony would be immaterial. *Ralph*, 2010 WL 457496, at *8.

Pointing to the lack of proof that Petitioner had been prevented from subpoenaing Clayton or that Clayton's testimony would have been material—indeed, there was nothing in the record to

28

indicate the content of her supposed testimony had she appeared at the trial, the TCCA found no error on the part of the trial court in denying Petitioner a continuance. *Ralph*, 2010 WL 457496, at *8.

As noted, the right to compulsory process in the Sixth Amendment is one aspect of the right to "make a defense." *See Faretta*, 422 U.S. at 818. The right to compulsory process is not violated by the mere deprivation of a witness's testimony in the absence of a plausible showing by a petitioner that the testimony "would have been both material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).

Petitioner did not make that showing in the state courts. Thus, though the TCCA did not cite to a Supreme Court case which controls Petitioner's Sixth Amendment claim, its decision is still entitled to deferential review under § 2254(d) and may not be disturbed unless the TCCA's reasoning or the result it reached contradicts the Supreme Court precedent. *See Early v. Packer*, 537 U.S. 3, 8 (2002).

Here, it does not. Neither the TCCA's reasoning nor the result it reached is contrary to or an unreasonable application of *Washington*, *Faretta*, *Velenzuela-Bernal* or any other relevant Supreme Court precedent. Petitioner's claim involving compulsory-process (or the denial of his right to present a defense) entitles him to no relief.

## IV. CONCLUSION

For the above reasons, this pro se state prisoner's application for a writ of habeas corpus will be **DENIED** and this case will be **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability (COA) which Petitioner has requested [Doc. 16 pp. 22-23]. A petitioner may appeal a final order in a § 2254 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial

29

showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c). A petitioner whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of a court's procedural rulings. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). Where claims have been dismissed on their merits, a petitioner must show that reasonable jurists would find the assessment of the constitutional claims debatable or wrong. *Slack*, 529 U.S. at 484.

After having reviewed the claims and in view of the law upon which is based the dismissal on the merits of the adjudicated claims and the procedural basis upon which is based the dismissal of the other claims, reasonable jurors would neither debate the correctness of the Court's procedural rulings nor its assessment of the claims. *Id*. Because reasonable jurists could not disagree with the resolution of these claims and could not conclude that they "are adequate to deserve encouragement proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), the Court will **DENY** issuance of a COA. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER**.


     */s/ Harry S. Mattice, Jr.*
     HARRY S. MATTICE, JR.
     UNITED STATES DISTRICT JUDGE